IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMARA WURTZ, | : | CIVIL ACTION |
| | : | NO. 08-3503 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DAY AND ZIMMERMAN, INC. | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                             DECEMBER 28, 2009

      Plaintiff Tamara Wurtz brought this lawsuit against her former employer, Day & Zimmermann, Inc., alleging that her employment was illegally terminated as a result of gender and national origin discrimination, in violation of Title VII.[1] Defendant moves for summary judgment on the grounds that Plaintiff has failed to establish a prima facie case of discrimination in violation of Title VII or the ADEA or,

---

[1] In her Complaint, Wurtz asserts that she was: (1) discriminated against because of her gender and/or national origin in violation of Title VII (Count I); (2) retaliated against in violation of Title VII (Count II); (3) discriminated against because of her age in violation of the ADEA (Count III); and (4) retaliated against in violation of the ADEA. (Compl. at ¶¶ 26-39.) In response to Defendant's summary judgement motion, Plaintiff only opposes Defendant's Motion as to Count I and makes no argument regarding her other claims. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Doc. no. 28.) Therefore, it appearing that Defendant is entitled to judgment as to these claims, judgment will be entered in favor of Defendant and against Plaintiff on Counts II, III and IV.

alternatively, has failed to demonstrate that its articulated, legitimate, non-discriminatory reason for terminating her is pretextual. (Def.'s Mot. for Summ. J., Doc. no. 23-2.) On June 12, 2009, Plaintiff filed an opposition to Defendant's motion. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Doc. no. 28.) On June 18, 2009, Defendant filed a motion for leave to file a reply in further support of the motion for summary judgment.[2] For the following reasons, Defendant's motion for summary judgment will be granted.

I. BACKGROUND

Tamara Wurtz ("Wurtz" or "Plaintiff") was born in Russia and became a United States citizen in 2003. Day and Zimmerman ("D&Z" or "Defendant") is a privately held company that provides mission critical services to the United States Department of Defense and Energy and approved foreign governments. D&Z's Munitions and Government Group, previously called its Munitions and Defense Group (DZMD), provides products and services to clients worldwide including the United States Army. (Def.'s Statement of Facts (Def.'s SOF) at ¶ 2, Doc. no. 24.) DZMD hired Plaintiff as DZMD's Marketing Director on

---

[2] The Court grants this motion and will refer to Defendant's reply brief. (Def.'s Reply, Doc. no. 30.).

November 18, 2006.[3]

Plaintiff was responsible for developing new business for DZMD including: identifying prospective clients and their munitions and defense needs, presenting DZMD's ability to meet those prospective clients' needs, and obtaining new business for DZMD. Moreover, she was hired to specifically work on the following projects: opportunities for sale of munitions to the United State military for use in Afghanistan and Iraq; a joint venture with a European fuze company to produce and sell fuzes in the United States; target "re-compete" efforts in which DZMD would compete for the opportunity to operate several government-owned munitions and facilities; and develop working models to outline the transition of certain government-operated facilities to private ownership and private operation. (Def.'s SOF at ¶ 6.)

Larry Fanning ("Mr. Fanning"), who was then Senior Vice President of DZMD, hired Wurtz and was also her direct supervisor. Charles Graves ("Mr. Graves") was a superior of Wurtz with respect to international business development, but not her supervisor. (Pl.'s SOF at ¶ 7; Pl.'s Dep at 161:7-9, 162:19-24.) In April 2007, after learning that Wurtz had failed to present DZMD with a thorough analysis of the market for the joint

---

[3] Plaintiff's position has alternatively been referred to as Executive Director - Marketing and Director of Business Development. (Compl. at ¶ 16; Pl.'s Statement of Facts (Pl.'s SOF) at ¶ 4.)

fuze venture, Mr. Fanning decided that DZMD should no longer pursue the opportunity. As a result, Wurtz's workload was reduced.[4] Moreover, DZMD was not selected for either of the two contracts it bid on to supply non-standard ammunition to U.S. forces in Afghanistan and Iraq while Plaintiff worked at D&Z.[5] (Def.'s SOF at ¶¶ 15, 16.)

Under these circumstances, Mr. Fanning decided that there was no work for Wurtz and that the Marketing Director position had not proved profitable. (Decl. of L. Fanning at ¶¶ 19-21.) On June 1, 2007, Mr. Fanning informed Wurtz that her position was being eliminated and her employment would be terminated due to budgetary concerns.[6] To date, D&Z has not

---

[4] The parties disagree about how the failed joint venture impacted Plaintiff's workload. Defendant believes this caused a significant impact and her workload was drastically reduced. (Def.'s SOF at ¶ 12.) Plaintiff believes it was only a portion of her workload, amounting to fifteen to twenty percent of her time. (Pl.'s SOF at ¶ 12.)

[5] Plaintiff argues that she worked on one of the contract bid proposals that was ultimately successful. Defendant refutes this and argues that the contract DZMD won was only available for bid in July 2007, after Plaintiff was fired in June 2007. (Def.'s Reply at 6 n.9.) It is undisputed; however, that DZMD only learned of its successful bid for the Iraq A contract in October 2007. (Id.)

[6] Plaintiff challenges the articulated reasons for her termination. She notes that although Mr. Fanning testified that the determining factor with regard to Plaintiff's termination was a lack of work, he admitted Plaintiff's performance was an issue with regard to her termination. (Pl.'s SOF at ¶ 28.) Plaintiff also highlights a tense working relationship she had with Mr. Graves as another possible factor in Mr. Fanning's decision to fire her. (Id.) She claims that Mr. Graves stopped giving her

-4-

replaced Plaintiff or her position. (Def.'s SOF at ¶ 30.)

III. DISCUSSION

A. Motion for Summary Judgment under Rule 56

A court may grant summary judgment when "the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. Id. at 248-49. "In considering the evidence, the court

---

assignments and the two had significant communication problems. (Id.)
    The parties also dispute whether Mr. Fanning also terminated the employment of several other DZMD employees to reduce expenses around the same time Wurtz was terminated. Defendant claims Plaintiff's co-worker, Mr. Beres, was terminated in April 2007 and later hired as an independent contractor. (Decl. of L. Fanning at ¶¶ 17-18, 25.) Mr. Beres avers that he was terminated in April 2007 and later re-hired in March 2007 as an independent contractor. (Decl. of J. Beres at ¶¶ 2-4.) Plaintiff argues; however, that Mr. Beres testified in his deposition that he was an independent contractor with DZMD, supporting proposal development for non-standard munitions from March 2007 until December 2008 and that his employment was never terminated, but his title simply changed. (Pl.'s SOF at ¶ 26.) The parties agree Mr. Fanning did terminate the employment of Milan "Rocky" Harrison, a Cost Analyst for DZMD, in the summer of 2007.

should draw all reasonable inferences against the moving party."
El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007).
However, while the moving party bears the initial burden of
showing the absence of a genuine issue of material fact, the
nonmoving party "may not rely merely on allegations or denials in
its own pleading; rather its response must-by affidavits or as
otherwise provided in [Rule 56]-set out specific facts showing a
genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

B. Title VII

Title VII protects employees from discrimination by
their employers on the basis of race, color, religion, sex or
national origin. 42 U.S.C. § 2000e-2. To prevail on a
discrimination claim based on indirect evidence,[7] an employee may
rely upon the familiar three-step burden shifting analysis under
McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[8] First, a

---

[7] Plaintiff does not claim that she has direct evidence of discrimination. Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005) (explaining that without direct evidence of discrimination, a plaintiff must proceed under the McDonnell Douglas framework). Moreover, the Court finds that Mr. Fanning's alleged statement was unrelated to the decisionmaking process that led to Plaintiff's termination. See, e.g., Bullock v. Children's Hosp. of Phila., 71 F. Supp. 2d 482, 486 (E.D. Pa. 1999) ("As a general matter, comments, even by a decision-maker, will not constitute direct evidence of discrimination, unless they are related to the decisional process itself."). Accordingly, the Court will apply the "circumstantial evidence" standard of McDonnell Douglas rather than the "direct evidence" standard of Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).

[8] Wurtz has also asked that the Court consider her claims in the context of the "mixed-motives" line of cases which began with

plaintiff must establish a prima facie case for discrimination. Id. at 802. That is, a plaintiff must demonstrate 1) that she is a member of a protected class; 2) that she was qualified for the position in question; 3) that she was discharged; and 4) that she was terminated "'under circumstances that give rise to an inference of unlawful discrimination.'" Waldron v. SL Indus. Inc., 56 F.3d 491, 494 (3d Cir. 1995) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). The Third Circuit has adopted a flexible view of this test, rejecting the requirement that a plaintiff compare herself to a similarly situated individual from outside her protected class to raise an inference of unlawful discrimination. See Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 n.7 (3d Cir. 2003). Importantly, however, a plaintiff "must establish some causal nexus between his membership in a protected class" and the adverse employment decision complained of. Id.

Establishing a prima facie case creates the presumption of unlawful discrimination. St. Mary's Honor Ctr. v. Hicks, 509

---

Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). However, a "mixed-motives" theory requires evidence "so revealing of discriminatory animus that it is not necessary to rely on the presumption from the prima facie case to shift the burden of production." Buchsbaum v. Univ. Physicians Plan, 55 Fed. App'x. 40, 45 (3d Cir. 2002) (non-precedential opinion). Plaintiff has failed to provide any direct evidence of discriminatory animus.

-7-

U.S. 502, 506 (1993).⁹ Then, the burden of production shifts to defendant to set forth a legitimate, non-discriminatory reason for its action. Id. Notably, the Third Circuit has held that this is a "relatively light burden" because the defendant "need not prove that the tendered reason actually motivated its behavior" but only that it may have. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). The legitimate, non-discriminatory reason stated by the employer thus provides plaintiff with the precise target at which to aim step three of the McDonnell Douglas analysis.

Upon defendant advancing such a reason, the presumption of unlawful discrimination "'is rebutted' . . . and 'drops from the case.'" St. Mary's Honor Ctr., 509 U.S. at 507 (quoting Burdine, 450 U.S. at 255 & n.10 (internal citation omitted)). Then, plaintiff must be given the opportunity to "show by a preponderance of the evidence that the employer's explanation is pretextual." Fuentes, 32 F.3d at 763; see also id. at 764 (noting that a Title VII plaintiff may not "avoid summary judgment simply by arguing that the factfinder need not believe the defendant's proffered legitimate explanations"). To demonstrate pretext, plaintiff must provide evidence that would allow a fact finder reasonably to "(1) disbelieve the employer's articulated

---

⁹Although the McDonnell Douglas framework shifts the burden of production to defendant, the ultimate burden of persuasion always remains with plaintiff. Burdine, 450 U.S. at 253.

legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not the motivating or determinative cause of the employer's action." Id. at 764.

C. National Origin Or Gender: Discrimination

1. Prima Facie Case

It is undisputed that Wurtz can establish the first three elements of a prima facie case of unlawful discrimination based on gender and national origin. Wurtz is a member of a protected class (Russian and female), was qualified for job, and that her employment was terminated. The parties dispute, however, whether Wurtz has established the fourth prong of the prima facie case – that she was terminated "'under circumstances that give rise to an inference of unlawful discrimination.'" Waldron, 56 F.3d at 494 (quoting Burdine, 450 U.S. at 253).

The Third Circuit has held that a plaintiff may demonstrate that the decision to terminate her was likely motivated by discriminatory animus where "those exhibiting discriminatory animus influenced or participated in the decision to terminate." Abramson v. William Paterson College of N.J., 260 F.3d 265, 285-86 (3d Cir. 2001). Wurtz argues that her superiors, Mr. Graves and Mr. Fanning, discriminated against her and were also involved in the termination decision.[10]

---

[10] Wurtz did not rely on Abramson in her summary judgment papers; however, the Court has addressed it as part of the prima facie analysis in an effort to construe the facts in the light

Specifically, Plaintiff avers that, at some point during her seven months of employment, Mr. Graves said "that's maybe how you do business in Russia, but we are in America." (Pl.'s Dep. at 189:13-15.) Moreover, Plaintiff also avers that Fanning said to her, in response to Graves' statement "oh, just get used to it, it is Chuck." (Id. at 228:17-20.) Later, Plaintiff contends that when Fanning informed about her terminated employment he said, "maybe I didn't speak good enough Russian, speaking in English to express myself." (Id. at 185:11-14, 195:20-196:10.)

D&Z admits that Mr. Fanning made the decision to terminate her employment, but denies he ever made such a statement. (Def.'s Mot. for Summ. J., Doc. no. 23-2 at 9.) D&Z responds that, in any event, an isolated statement about an employee's national original does not create an inference of discrimination where a plaintiff cannot otherwise show that she was treated differently than others.

In Moulouad, the Moroccan plaintiff alleged that the University's Dean told him, "'[Y]ou have two strikes against you in this University. A that you're not white and B, you have an accent.'" Mouloud v. Temple Univ., No. 06-599, 2007 WL 2972595 (E.D. Pa. Oct. 9, 2007) (Kauffman, J.). In granting the defendant's motion for summary judgment, the Court found that although the statement may have been inappropriate, it was the

---

most favorable to Wurtz.

-10-

only instance during the plaintiff's brief tenure in which he felt any form of discrimination, and as a result, the comment was an isolated one. Id. at *3. Similarly, in this case, Plaintiff has not alleged that Mr. Fanning made any other discriminatory comment that referenced her national origin.

Defendant also notes that Mr. Fanning made the decision to hire Plaintiff and fire her seven months later and argues that it is, thus, improbable Mr. Fanning developed a discriminatory animus towards Plaintiff in the seven months between the time he hired her and the time he terminated her. See, e.g., Buhrmaster v. Overnite Transp. Co., 61 F.3d 461, 463 (6th Cir. 1995) (The "length of time between the hiring and firing of an employee affects the strength of the inference that discrimination was not a factor in an employee's discharge."); Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270-72 (9th Cir. 1996) (strong inference of no discriminatory motive when both employment actions occurred within one year).

Many courts have recognized that when an individual makes a favorable employment decision and then the same individual later makes an adverse employment decision, a strong inference arises that a non-discriminatory motive exists. Evidence that the "same actor" hired and fired Plaintiff is noteworthy, but not dispositive, evidence of non-discrimination. See Waldron, 56 F.3d at 496 n.6 (finding that the "same actor"

evidence is "simply evidence like any other kind"). This Court follows Waldron and finds that the evidence Mr. Fanning hired and fired Wurtz within seven months is, like other evidence in the record, important but not dispositive.

Plaintiff further argues that she "was the only woman and the only Russian terminated from [D&Z] and no one was transferred and/or hired to fill [her] position." (Pl.'s Resp. to Def.'s Mot. for Summ. J., Doc. no. 28 at 5.) Plaintiff believes these facts, in and of themselves, give rise to an inference of discrimination.[11] The Court disagrees with Plaintiff. To the contrary, another Russian woman, Anna Popova, worked within the same department as Plaintiff and also reported to Mr. Fanning,

---

[11] Plaintiff also testified that during her interview with Lisa Verrecchia, D&Z's Director of Human Resources, Ms. Verrecchia told Plaintiff that "I'm so excited to interview a woman for business development in munitions and defense, because . . . its not a very friendly environment for women to work." (Pl.'s Dep. at 215:2-10.) Plaintiff also testified that when she began working at D&Z she noticed that there were few women, especially few female executives. (Pl.'s SOF at ¶ 42.) Defendant responds that Ms. Verrecchia testified that she may have made this statement regarding her opinion that there tends to be more men than women working in the munitions and defense industry as a whole (as opposed to referring to D&Z in particular). (Verrecchia Dep. at 23:21-24:4.) Defendant claims that Ms. Verrecchia did not make any statement to Wurtz that D&Z favored males or that D&Z was unfriendly toward females. Defendant additionally notes that despite the fact that DZMD is a small entity, two of the seven directors at the time Plaintiff was employed there were female. (Def.'s Mot. for Summ. J., Doc. no. 23-2 at 23.) Plaintiff offers no other circumstantial evidence of gender discrimination and does not support her argument of gender discrimination in her response to Defendant's motion for summary judgment. Thus, these allegations do not support Plaintiff's claim for unlawful termination.

but was not terminated. (Def.'s SOF at ¶¶ 37-39; accord Pl.'s SOF at ¶¶ 37-39.) This undisputed fact supports Defendant's position that Mr. Fanning did not harbor any discriminatory animus towards Russian women and undercuts Plaintiff's argument as to an inference of discrimination regarding her termination.

Finally, it is undisputed that D&Z did not transfer or hire anyone to replace Plaintiff's position. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Doc. no. 28 at 5.) The Court agrees with Defendant that the fact that Plaintiff's former position has remained vacant bolsters Defendant's argument that there was no work for her to perform and, therefore, no need to maintain Plaintiff's former position. Accordingly, Plaintiff fails to satisfy prong four of the prima facie case of gender or national origin discrimination.

2. Pretext Analysis

For the sake of completeness and assuming Plaintiff could satisfy the prima facie case, the Court will undertake the balance of the McDonnell Douglas analysis.

At the second step of the McDonnell Douglas analysis, D&Z has advanced a legitimate, non-discriminatory reason for its decision to terminate Wurtz. Namely, Mr. Fanning determined that he had no work for Wurtz to perform and, therefore, there was no need to maintain her or her position in D&Z's budget. (Def.'s SOF ¶ 27.) D&Z hired Wurtz to work on: (1) a joint venture with a

European company to produce and sell fuzes in the United States and (2) compete, through written proposals, for contracts to provide non-standard weapons to forces in Iraq and Afghanistan. (Decl. of L. Fanning at ¶¶ 9-12.) Defendant failed to obtain contracts with the European fuze company and the Army, which adversely impacted Defendant's bid and proposal budget. Consequently, there was less work for Plaintiff to perform and Defendant could not obtain any business attributable to its creation of the Marketing Director position. (Fanning Dep. at 148:3-18.) On this basis, Defendant has stated a non-discriminatory reason for the termination, i.e., lack of relevant work for Plaintiff to perform.

At the third step of the McDonnell Douglas analysis, Plaintiff must show that the stated non-discriminatory reason for termination is a pretext. Wurtz argues that there are four reasons that the proffered basis for her termination is pretextual. She argues: (1) there is conflicting testimony with regard to the reason why she was terminated; (2) there is conflicting testimony with regard to an analysis that was prepared which allegedly justified her termination and has not been uncovered; (3) there is conflicting testimony with regard to Plaintiff's involvement with the contract to provide non-standard weapons that D&Z ultimately won after she was terminated; and (4) there is a genuine issue of material fact with regard to Mr.

-14-

Beres' alleged termination. None of the stated grounds has merit.

One, Wurtz argues that there is conflicting testimony with regard to the reason why she was terminated. While it is true that a plaintiff may rely on "inconsistencies" and "contradictions" to demonstrate pretext, pointing to a single inconsistency does not automatically overcome a legitimate, non-discriminatory reason for termination. See Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 649 n.15 (3d Cir. 1998) (discussing inconsistencies in an EEOC position statement and noting that "'the mere fact that a defendant relies on a post hoc [explanation] does not in and of itself create a factual dispute about whether the [explanation was] pretextual.' . . . The plaintiff must point to evidence that demonstrates there is reason to disbelieve the explanation." (quoting Healy v. New York Life Ins. Co., 860 F.2d 1209, 1215 (3d Cir. 1988)); see also, Schaefer v. Independence Blue Cross, Inc., 03-CV-5897, 2005 WL 181910, at *1 (E.D.Pa. Jan. 26, 2005) (Surrick, J.) (noting that "discrepancies between Defendant's position statements to the EEOC and later explanations are not per se evidence of pretext").

In this case, Mr. Fanning communicated to Plaintiff at the time of her termination that she was being terminated for budgetary reasons. (Pl.'s Dep. at 201:20-202:11.) Mr. Fanning

-15-

and D&Z have been consistent and clear that budgetary concerns did in fact lead to Plaintiff's termination.[12]

Two, Wurtz notes that Mr. Fanning testified about an analysis that showed how many proposals D&Z had lost and the margin by which those proposals were lost. Wurtz notes this document was lost and neither Mr. Fanning nor Mr. Beres could locate it during discovery. (Fanning Dep. at 106:22-24, 108:6-14.) Plaintiff argues that this document is vital and key to Mr. Fanning's decision to terminate her. Presumably, Plaintiff would like the Court to draw an adverse inference from Defendant's failure to produce the document. However, at his deposition, Mr. Fanning testified that the analysis showed D&Z was losing its

---

[12] Plaintiff focuses on one point during Mr. Fanning's deposition when he was pressed to say that Plaintiff's performance was an issue with regard to her termination. (Fanning Dep. at 148:16-149:10.) However, Mr. Fanning repeatedly testified that the lack of work for the Plaintiff was the determining factor in her termination. (Id. at 148:19-23, 117: 15-24, 130:14, 159:20-24.) In light of all of the other testimony confirming that Plaintiff's termination was due to a lack of work and general budgetary concerns, Mr. Fanning's one comment about Wurtz's performance, as part of his consideration in firing her, does not suffice to prove that Defendant's reason for terminating plaintiff was merely a pretext for discrimination.

Plaintiff also asserts that Mr. Graves deliberately stopped assigning her work, with Mr. Fanning's knowledge, which led to her lack of work and, ultimately, her termination. Parties agree that Mr. Graves was not Plaintiff's supervisor (Pl.'s Dep. at 161:7-9, 162:19-24; Graves Dep. at 60:20-22.) There is no evidence to support the argument that Mr. Graves had a part in Plaintiff's termination, despite any working relationship difficulties he may have had with Wurtz. (Graves Dep. at 62:7-14.)

proposals for the non-standard weapons contracts, which Plaintiff does not refute. In essence, there is no evidence to suggest that this document is vital towards an understanding of the reasons for Wurtz's termination, which has already been established as a lack of work.

Three, Wurtz argues that there is conflicting testimony with regard to Plaintiff's involvement with the contract DZMD ultimately won to supply non-standard weapons, the Iraq A contract. Wurtz contends that her testimony that she identified and worked on the contract that DZMD ultimately won, and thereby generated new business and new revenue for DZMD, raises a genuine issue of material fact as to D&Z's assertion that Plaintiff was terminated due to a lack of work and budgetary constraints. (Pl.'s Resp. at 13-14.) Wurtz's reasoning is confused and not persuasive. The record indicates that D&Z was awarded the Iraq A contract in October 2007, after Plaintiff was terminated in June 2007. (Def.'s Reply at 6 n.9.) Accordingly, at the time that Mr. Fanning made the decision to eliminate Wurtz's position, it is undisputed that D&Z had not been successful at obtaining any contracts for non-standard weapons. (Id.) Although there is conflicting argument as to whether Plaintiff worked on the winning contract, it is simply immaterial as Mr. Fanning made his decision based on D&Z's financial situation as of June 1, 2007.

Four, Plaintiff argues that Mr. Beres continues to be

employed at D&Z in her former area of employment, substantiating her pretext argument. (Pl.'s Resp. at 7, 14.) Admittedly, it is unclear when he officially became an employee of D&Z and when he worked for Defendant as an independent contractor.[13] Regardless of Mr. Beres' current employment status, it is clear that Mr. Beres did not replace Wurtz's position. He worked on proposal development for non-standard munitions proposals and other project manager duties. His role did not consist of any marketing or business development activities. (Decl. of L. Fanning at ¶ 18.)

Plaintiff claims that Mr. Beres worked on "international business" but points to nothing in the record to support this claim. To the contrary, Mr. Beres testified that he was not involved with the Taiwan and India projects, the international projects. (Beres Dep. at 29:2-10.) Moreover, Plaintiff admits that Mr. Beres was only working at D&Z to support proposal development and draft bids for government projects, he was never involved in generating new leads. (Pl.'s

---

[13] Mr. Fanning averred that Mr. Beres was terminated in April 2007 due to budgetary constraints and was later rehired as an independent contractor in July 2007 to work in the development of D&Z's non-standard weapons contract (Decl. of L. Fanning at ¶ 17, 25.) Mr. Beres, in his deposition, testified that he was an independent contractor with D&Z from March 2007 to December 2008. (Dep. of J. Beres at 12:18-20, 24:14-17.) Mr. Beres also later declared that he was terminated in April 2007 and later re-hired in March 2007 as an independent contractor. (Decl. of J. Beres at ¶¶ 2-4.)

-18-

SOF at ¶ 36.) Under these circumstances, Plaintiff fails to raise a genuine issue of material fact as to whether Mr. Beres replaced her.

Wurtz has not pointed to sufficient evidence from which a reasonable jury could conclude that Defendant's legitimate non-discriminatory reason for her termination was pretextual.

III. CONCLUSION

For these reasons, Defendant's motion for summary judgment shall be granted. An appropriate order will issue.